**LEATHERBACK SEA TURTLE (Dermochelys coriacea), Loggerhead Turtle (Caretta caretta), Atlantic Green Sea Turtle (Chelonia mydas), Shirley A. Reynolds, and Stephen Belida, Plaintiffs,**

v.

**FLAGLER COUNTY BOARD OF COUNTY COMMISSIONERS, a political subdivision of the State of Florida, Defendant.**

No. 3:04 CV 703 J 99HTS.

United States District Court,
M.D. Florida,
Jacksonville Division.

Sept. 24, 2004.

Ross Stafford Burnaman, Attorney at Law, Tallahassee, FL, for Plaintiffs.

Jeffrey D. Keiner, Trevor B. Arnold, Richard E. Mitchell, Grayrobinson, P.A., Orlando, FL, Patrick F. McCormack, Flagler County Attorney's Office, Bunnell, FL, for Defendant.

## ORDER

SCHLESINGER, District Judge.

Before the Court is Plaintiffs' Motion for a Preliminary Injunction (Doc. No. 2, filed August 19, 2004) and Memorandum in Support (Doc. No. 3, filed August 19, 2004). Defendant opposes the Preliminary Injunction Motion (Doc. No. 17, filed September 7, 2004). On September 21, 2004, a hearing was held on the Motion. As a preliminary matter, the Court commends the Parties on their flexibility in terms of rescheduling of the hearing given the string of recent tropical storms and hurricanes and on their respective presentations to the Court.

Plaintiffs filed suit pursuant to the citizen suit provision of the Endangered Species Act (ESA), 16 U.S.C. § 1540(g). Plaintiffs claim that "Defendant's continued authorization of public motor vehicular traffic on County beaches constitutes a 'taking' of endangered species of sea turtles in violation of 16 U.S.C. § 1538(a)(1)(B), and of threatened Loggerhead sea turtles in violation of USFWS regulations adopted under 16 U.S.C. § 1533(d)." (Doc. No. 1, ¶ 45, filed August 19, 2004). Additionally, Plaintiffs argue that beach driving poses an ongoing threat of injury and death to those sea turtles coming on shore to nest and those emerging from the buried nests, and that this threat necessitates the granting of a preliminary injunction.

Specifically, Plaintiff's Motion seeks to enjoin Defendant from authorizing driving on the beach at any hour within the unincorporated portions of Flagler County during the sea turtles' nesting season, which runs until October 31, 2004. At the outset, it must be noted that while Plaintiffs' Motion seeks to enjoin beach driving both during the day and night, that portion of the Motion addressing evening driving is now **MOOT** at this juncture. The Court takes judicial notice of the Resolution recently passed by the Flagler County Board of County Commissioners (Doc. No. 33, filed September 21, 2004), which prohibits beach driving "between the hours of sundown and sunup" in response to the damage caused by Hurricanes Charley and Frances until January 1, 2005. Therefore, because the Court is only dealing with a Preliminary Injunction, the Court will only consider that portion of the Motion seeking to prohibit driving during the daylight hours. In the event that the Resolution is changed before January 2005, this Court can hold an emergency

hearing on nightime driving on a one-day notice.

### Background

The nesting behavior of sea turtles is well documented; therefore, the Court will only briefly summarize the process.[1] The sea turtle nesting season in Florida begins approximately the beginning of May and continues until the end of October. At night, female turtles make their way ashore and travel to the dunes' edge. The female turtle digs a shallow hole in the sand and deposits her eggs into the hole. After covering the eggs with sand, the female turtle returns to the sea.

The incubation period of sea turtle eggs is approximately two months. Normally, at the end of the incubation period, the hatchlings emerge from their nests at night when they sense the decrease in the sand's temperature. The hatchlings instincts are then to head toward the night sky as it is reflected on the ocean waters. The time between the hatchlings emergence and their reaching the sea is critical. The hatchlings must successfully reach the sea within a few hours of emerging from their nest or risk succumbing to exhaustion, dehydration, or predators.

### Standard for Granting a Preliminary Injunction under the ESA

■■■ The ESA has been described by the Supreme Court as the "most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 180, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). Normally, a party seeking a preliminary injunction must carry its burden of persuasion with respect to each of the following prerequisites: (1) a substantial likelihood of success by the movant on the merits; (2) that the movant will suffer irreparable harm unless the injunction issues; (3) that the threatened injury to the movant outweighs any threatened harm the injunction may cause the opposing party; and (4) that the injunction, if issued, will not disserve the public interest. *See e.g., United States v. Jefferson County,* 720 F.2d 1511, 1519 (11th Cir.1983). However, given the monumental and important aims of the ESA, Congress effectively removed from the courts their traditional equitable discretion in injunction proceedings. *See Id.* at 184, 98 S.Ct. 2279; *National Wildlife Fed'n v. Burlington Northern R.R., Inc.,* 23 F.3d 1508, 1510–11 (9th Cir.1994). Therefore, the traditional test for considering preliminary injunctions is inappropriate.

■■■ Instead, Courts have explained that a petitioner seeking a preliminary injunction under the ESA is required to show that the wildlife at issue is protected under the Act, and that there is a reasonable likelihood that the defendant's behavior will result in future violations of the Act. *See National Wildlife Fed'n,* 23 F.3d at 1511; *Loggerhead Turtle v. County Council of Volusia County,* 92 F.Supp.2d 1296 (M.D.Fla.2000); *Loggerhead Turtle v. County Council of Volusia County,* 896 F.Supp. 1170 (M.D.Fla.1995).

It is undisputed that the aforementioned sea turtles are either endangered or threatened as defined by statute. The Court now turns to the determination of whether Plaintiffs have carried their burden in demonstrating that Defendant's current authorization of vehicular driving on the beach during daylight hours is reasonably likely to cause a future taking of protected sea turtles. After considering the Parties' affidavits, declarations, and the testimony and argument given at the

---

1. For an extensive discussion of sea turtle nesting behavior the reader is directed to *Loggerhead Turtle v. County Council of Volusia*

*County,* 896 F.Supp. 1170, 1173 (M.D.Fla. 1995)

hearing, the Court finds that Plaintiffs have not sufficiently met their burden.

The Court again notes that only daytime driving is at issue in terms of the preliminary injunction. While Plaintiffs' rely heavily on *Loggerhead Turtle*, 896 F.Supp. 1170, the evidence presented in that case specifically resulted in a finding that *nighttime driving* and driving in the "conservation zone" were reasonably likely to result in future takings of protected sea turtles. In fact, Judge Conway further noted that the evidence before her did not "demonstrate that daytime traffic is likely to result in the taking of protected sea turtles." *Id.* at 1182.

A variety of factors result in the Court's finding that it is not reasonably likely that continued beach driving during the daytime will result in future takings of protected sea turtles. First, in terms of the possible harms caused by driving on the beach, there are numerous issues over which the Parties' experts disagree. Most importantly, the experts differ in their opinions on the affect that vehicle tire ruts have on female turtles nesting attempts and on hatchlings' quest toward the sea. Plaintiffs' depositions and affidavits discuss the possible effects of tire ruts, including false crawls of nesting females and hatchlings getting stuck in or disoriented by them. But, as Defendant notes, these observations seem to be merely an exercise in the possible. Plaintiffs have put forth no evidence of any hatchling that perished because of its being stuck in a tire rut. Nor has it been established that the two false crawls mentioned by Plaintiffs occurred because of the existence of tire ruts. Given the fact that female turtle emergences result in a nesting only approximately fifty percent of the time, it is just as likely that the false crawls were an example of a naturally occurring abandoned nesting attempt.

The Court also notes the effects that the weather, specifically the recent hurricanes, have had on the existent sea turtle nests and eggs. Most significantly, the storm surge of Hurricane Frances just two weeks ago caused the sea water to cover the entire beach up to and over the dunes for a period in excess of twenty-four hours and the washing away of many nests. Additionally, the beach is scattered with debris, including large pieces of timber that may inhibit a turtle from crossing the beach in either direction. It also resulted in excess deposits of sand on the beach, which has buried some nests to such an extent that hatchlings may not be able to effectively emerge. Defendant's expert, Ray Ashton, referenced a number of scientific studies that found a very low probability of hatching when sea turtle eggs are inundated for a period of twenty-four hours. Nonetheless, Mr. Ashton acknowledged that it was possible that a few remaining eggs would hatch. This possibility is supported by the affidavit of Beth Libert, in which she states she has received a report from a Turtle Patrol volunteer that a sea turtle emergence took place on September 12, 2004. Ms. Libert goes on to opine that, in her opinion, more viable sea turtle nests remain on the beach.

Plaintiffs also present evidence that new sea turtle nests are being laid. Assuming that this is true, there are questions concerning the viability of these nests. Temperature of the sand and water is critical to a successful hatching. The undisputed evidence before the Court is that the lower minimum for successful sea turtle hatching is 70 degrees Fahrenheit. As the beach's water and sand temperature will likely reach this level before the late November

December hatching date of any newly established nest, the viability of new nests is tenuous at best.

■ While the Court joins with the Plaintiffs in hoping that future sea turtle hatchlings emerge, the Court must be realistic in considering the probability of future emergences this nesting season and, based on that, the reasonable likelihood of a future taking. Given the length of time the nests were inundated, the aberrant nature of any recent or future nesting attempts, and the dwindling time in which temperatures will be favorable to hatchings, the probability of any further emergences this season, although existent, is exceedingly low.[2]

Based on Plaintiff's failure to provide sufficient evidence to support a finding that daytime beach driving is reasonable likely to result in a taking of a protected sea turtle, especially in light of the severe environmental consequences caused by the recent hurricanes, Plaintiffs' Motion for a Preliminary Injunction is **DENIED**.

---

**2.** Without giving the Parties notice, the Court also takes judicial notice of the current forecast that has Flagler Beach in the path of Hurricane Jeanne. It is clear that if Jeanne's path remains constant the beach and the remaining nests will sustain further damage because it is currently projected by the National Hurricane Center that within the next 72 hours Hurricane Jeanne will hit Flagler Beach with winds of 115 miles an hour. The Court is aware that no notice was given and that judicial notice in such a circumstance is frowned upon by the Federal Rules of Evidence. See Fed.R.Evid. 201(e), However, under these extenuating circumstances the Court is certain Counsel would not object.