**SIERRA CLUB, Petitioner,**

v.

**Anne M. GORSUCH, Administrator of the Environmental Protection Agency, Respondent,**

**National Coal Association Alabama Power Association, et al., Intervenors.**

Nos. 79–1565, 79–1719, 79–1867, 79–1874, 80–1187, 80–1201, 80–1213 and 80–1338.

United States Court of Appeals, District of Columbia Circuit.

July 16, 1982.

As Amended July 16, 1982.

Certiorari Granted Oct. 18, 1982.
See 103 S.Ct. 254.

See also, D.C.Cir., 657 F.2d 298, D.C. Cir., 672 F.2d 33.

Before ROBB, WALD and GINSBURG, Circuit Judges.

Opinion PER CURIAM.

Opinion dissenting in part filed by Senior Circuit Judge ROBB.

PER CURIAM:

■ In *Sierra Club v. Gorsuch*, 672 F.2d 33 (D.C.Cir.1982) (hereinafter *Sierra Club II*), we held that an award of attorneys' fees to the Sierra Club and the Environmental Defense Fund ("EDF"), non-prevailing parties in *Sierra Club v. Costle*, 657 F.2d 298 (D.C.Cir.1981) (hereinafter *Sierra Club I*), was "appropriate" under section 307(f) of the Clean Air Act 42 U.S.C. § 7607(f), because those parties had "substantially contributed" to the goals of the Clean Air Act Amendments of 1977 by litigating "important, complex and novel" issues of statutory interpretation. *Sierra Club II*, 672 F.2d at 39. At the express suggestion of the government, we postponed consideration of the precise amount of compensation to be awarded in order to allow the parties to resume negotiations which had been abruptly ended by a shift in government policy resulting in routine opposition to the grant of attorneys' fees to non-prevailing parties. *Id.* at 34 n.2. Unfortunately, a settlement has proven impossible. Accord-

ingly, we must now resolve the matter. Taking into account the decisions of this court in *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319 (D.C.Cir.1982) (as amended July 15, 1982) (hereinafter *NACV*); *Environmental Defense Fund v. Environmental Protection Agency*, 672 F.2d 42 (D.C.Cir.1982) (hereinafter *EDF v. EPA*); *Alabama Power Company v. Gorsuch*, 672 F.2d 1, 33 (D.C.Cir. 1982); *Anderson v. United States Department of the Treasury*, 648 F.2d 1 (D.C.Cir. 1979); and, most important, *Copeland v. Marshall*, 641 F.2d 880 (D.C.Cir.1980) (en banc) (hereinafter *Copeland*), we find that Sierra Club is entitled to attorneys' fees amounting to $44,715 (plus $644.60 in expenses[1]) and that EDF is entitled to $45,874.80.

## I. SIERRA CLUB'S REQUEST

Prior to the termination of fee negotiations in August, 1981, the government made a written offer of $32,265 to Sierra Club, which Sierra Club claims to have accepted before the government withdrew the offer under a revised policy of disputing all attorneys' fees claims by non-prevailing parties. Following our opinion in *Sierra Club II*, declaring that the Clean Air Act contemplated attorneys' fees awards in "appropriate" cases and holding *Sierra Club I* to be such a case, Sierra Club submitted a proposal for $60,656.75. This figure included Sierra Club's computation of the "lodestar"— "the number of hours reasonably expended multiplied by a reasonable hourly rate," *Copeland*, 641 F.2d at 891—on the basis of 479.5 hours at $110 per hour plus a 15% upward adjustment of the lodestar amount due to the government's alleged delaying tactics throughout the fee proceedings. *See* Sierra Club's Report To The Court And Second Amended Request For Attorneys' Fees at 2 (May 10, 1982) (hereinafter Sierra Club's Report). The government countered with an offer of $36,335, representing a reduction in hours and an hourly rate of $90 rather than $110 for time spent on the case-in-chief by the Sierra Club's attorney,

---

1. Sierra Club requested an award of $2,642.96 for expenses. In the exercise of our discretion, *see* 42 U.S.C. § 7607(f); *see also* Fed.R.App.P. 39, we do not allow expenses for filing fees ($139.42), brief printing ($658.94), and preparation of the appendix ($1,200). The $497.14 lawyer overhead costs, consisting of telephone calls and airfare documented prior to October 13, 1981, should be awarded, however, as out-

of-pocket expenses not reimbursable in the counsel's *hourly* rate. Likewise, we allow $147.46 in similar expenses (telephone ($65.34) and copying ($82.12)) incurred since October 13, 1981; contrary to the government's assertion, they were properly documented. *See* Declaration of Joseph J. Brecher at 1 (May 5, 1982).

Joseph Brecher.[2] *See id.* at Exhibit B. The government's figure, however, included the full 37 hours claimed for work on the attorneys' fees issue at $110 per hour. *Id.* The government predictably resisted any upward adjustment in the lodestar amount. *Id.* Sierra Club's final counteroffer, which was refused, was for 459.5 hours at $110 or $50,545.

■ Now Sierra Club requests $106,590 (and litigation costs of $2,642.96) based upon a lodestar of 484.5 hours (an additional 5 hours having been spent on fee negotiations) at $110 per hour, or $53,295, supplemented by a 50% upward adjustment for "exemplary" quality of representation and the public benefit conferred, and an additional 50% for delay in receipt of payment. The three main points of contention between Sierra Club and the government are: number of compensable hours, rate of pay for Brecher's time and the percentage of upward adjustment, if any.

### A. *Number of Hours*

■ The government argues that Sierra Club's claim of 442.5 hours for work on the judicial aspect of its case-in-chief impermissibly includes non-litigation related activities as well as excessive hourly claims for certain litigation related activities. Specifically, approximately 67 hours for which Sierra Club seeks compensation were devoted to preparation of its administrative petition for reconsideration. The government correctly objects to these hours based upon our holding in *Sierra Club II*, which states: "the same statutory language that allows us to make attorneys' fees awards in cases such as *Sierra Club [I]*, limits our power to judicial awards .... Sierra Club and EDF are, therefore, not entitled to an award of attorneys' fees for their participation in the administrative proceedings preceding their appeal." 672 F.2d at 42. Sierra Club's claim for these 67 hours is based upon a

reading of that statement which lays too much emphasis upon the phrase "preceding their appeal," modifying "administrative proceedings." While it appears in this case that the petition for reconsideration to the Administrator was filed *after* an appeal from the decision on the final rule had been noticed, *Sierra Club II* was not intended to sanction attorneys' fees awards for administrative proceedings that happen to follow a notice of appeal. Indeed, in our subsequent decision in *American Petroleum Institute v. Costle*, 665 F.2d 1176, 1191–92 (D.C.Cir. 1981), we made it clear that the filing of a petition for reconsideration was a statutory prerequisite to judicial review of procedural objections arising after the close of the comment period. Hence, we disallow the 67 hours spent on the petition for reconsideration, as well as 5.5 hours afterward devoted to research apparently connected therewith.[3]

Another 15.5 hours disputed by the government pertains to time Sierra Club claims to have spent preparing its petition for judicial review, a one-page document. The government concedes, United States' Response to Sierra Club's & Environmental Defense Fund's Status Reports and Amended Requests for Attorneys Fees at 9 (May 10, 1982) (hereinafter U.S. Response), that the "reasonable" number of hours spent on that document is "simply a matter of judgment." Although we note that a less experienced lawyer was allowed 42 hours for this purpose in *EDF v. EPA*, 672 F.2d at 50, we believe 10 hours is a reasonable amount here since the preparer was Brecher himself and his hourly rate a premium one. We additionally note the government did not object to 10 hours allocated by EDF for such a purpose in this proceeding.

Thus we disallow 78 of Brecher's hours for Sierra Club's case-in-chief. We also note, however, that Brecher documents 5 hours devoted to attorneys' fee negotiations

2. Joseph Brecher is the only attorney for whom compensation is sought by Sierra Club. Sierra Club's original petition in May, 1981 had requested only $90 per hour for Brecher's time. This was revised in October to $110, after negotiations had broken off. Sierra Club's Report at Exhibit C.

3. These hours cover research on the following matters:

| Date of Work | Description | Hours |
|---|---|---|
| 1/23/80 | Draft letter to Costle re: California SO$_2$ scrubbers | 1.0 |

| Date of Work | Description | Hours |
|---|---|---|
| 1/24/80 | Submit letter re: 95% control | 2.5 |
| 1/25/80 | Research re: western scrubbers | .5 |
| 1/26/80 | Draft letter to Costle re: S.C. Coal Project | 1.5 |

Declaration Of Joseph J. Brecher In Support Of Sierra Club's Motion For An Award Of Attorneys Fees, Exhibit A at 4 (May 11, 1981). We have no indication that this research between January 23 and 26 was concerned exclusively with judicial matters. The petition for reconsideration was not denied until February, 1980.

since our decision in *Sierra Club II*, and we see no reason to limit the allowable time to the 37 hours previously expended as the government suggests. This makes the allowable total for Sierra Club 406.5 hours.

### B. *Hourly Rate*

The government vigorously contests a rate of $110 per hour for Sierra Club's counsel. It suggests, citing *NACV*, that Sierra Club did not document its claim that $110 per hour was the "market rate" for Brecher's time by affidavits, from Brecher himself or from other counsel with comparable experience, showing billings for private clients at such a rate in comparable cases or recent court awards of fees to them in cases of comparable complexity. We do not think that affidavits of private attorneys like Brecher who represent primarily non-profit public interest organizational clients about their billing practices are necessary in all cases, especially where evidence of recent court awarded fees in comparable cases to comparably experienced lawyers exists to satisfy the demands of *Copeland* and *NACV* that court awarded fees be based on the prevailing market rate for the attorney's services.[4]

■ For several reasons, we believe that the $110 hourly rate is proper for Brecher's time. First, Joseph Brecher is a well known environmental lawyer, who is retained by the Sierra Club Legal Defense Fund to represent them in many litigation matters. He has continuously engaged in the practice of environmental law since 1970, representing primarily environmental organizations and Indian tribes before state and federal courts including the Supreme Court of the United States. He is the author of books and articles on environmental law and teaches that subject at Golden Gate Law School. Second, in our *Sierra Club II* opinion we alluded to the "technical complexity of the case" and its need for "extensive preparation" as well as its "importance to the national welfare." Third, we have a very recent precedent in our own court awarding $110 per hour fees expressly based upon prevailing market rates to a comparably experienced public interest lawyer in a comparably complex environmental case. In *EDF v. EPA*, 672 F.2d at 58, the court stated:

> In this case, given the importance of the post-decision negotiations, the high level of skill required (to maintain a litigation victory and yet accommodate to the legitimate needs and interests of numerous intervenors and a federal agency), the significant public interest value of the litigation, and the going "market value" for the services of a lawyer with rate claimed for Mr. Butler is perfectly reasonable.[5]

*See also Palila v. Hawaii Dept. of Land & Natural Resources*, 512 F.Supp. 1006 (D.Haw.1981) ($110 per hour fee award).

■ Finally, the government suggests we lower the hourly rate because Sierra Club did not prevail. We decline to do so for the same reasons we declined to lower the hours "reasonably expended" in *EDF v. EPA* on issues on which EDF did not prevail. *See EDF v. EPA*, 672 F.2d at 55. In so doing, we do not suggest such a reduction may never be proper. *See Copeland*, 641 F.2d at 893. Nonetheless, here the public service benefits of the litigation and the relative modesty of the fee for Brecher's gargantuan efforts on the case do not in our opinion warrant any reduction if the Clean Air Act's overriding purpose of encouraging constructive legal challenges, which would not otherwise be brought for lack of economic incentive, is to be served.

### C. *Adjustments to the Lodestar*

■ Sierra's lodestar then is 406.5 hours at $110 per hour or $44,715. Sierra Club asks for a "substantial upward adjustment in the lodestar," *i.e.*, 100% based on the three factors identified in *Copeland* and *EDF v. EPA* : quality of representation; public benefit; and delay in receipt of payment. We decline, however, to allow any upward adjustment in this case for the following reasons:

---

4. *NACV*, 675 F.2d at 1325, recognizes that "lawyers associated with public interest groups or single practitioners who specialize in Title VII or FOIA cases ... may not have an established 'billing rate' that reflects how their own services have been valued in the market."

5. In *EDF v. EPA*, 672 F.2d at 58, we noted that "EPA does not seriously contest the accuracy of rates cited by EDF insofar as 'market value' is concerned." Butler, *see EDF v. EPA*, 672 F.2d at 50, and Brecher have been in environmental practice for the same period of time, spearheading the same kinds of litigation.

We think it is proper to consider in this regard, as the government suggests, that Sierra Club did not prevail on any issue. The aim of "appropriate" attorneys' fees is to encourage parties without economic incentives to litigate important issues, but such efforts cannot be risk-free. Compensation for reasonable hours at market rates will generally be sufficient where the party has not prevailed.[6] *See Copeland,* 641 F.2d at 844 ("The 'lodestar' itself generally compensates lawyers adequately for their time. An upward adjustment for quality is appropriate only when the attorney performed exceptionally well, or obtained an exceptional result for the client.") *EDF v. EPA,* 672 F.2d at 59–61, allowed a "modest" adjustment of 15–20% to reflect benefits to the public as well as the delay in receipt of payment. In that case, however, the claimants had prevailed on several of the issues in the suit. And although it is true that payments were delayed here, as well as in *EDF v. EPA,* through an initial termination in negotiations, on balance we do not consider the government's desire to test its new "prevailing party" fee policy in court so arbitrary as to court penalties. Sierra Club's counsel is being paid at $110 per hour, the current market rate, whereas his original request was for $90 per hour, thus according him some compensation for the delay. *See EDF v. EPA,* 672 F.2d at 60; *Copeland,*

641 F.2d at 893 n.23. As in *EDF v. EPA,* we allow no adjustment for the contingency factor since Sierra Club is being paid despite its non-prevailing status. And while the quality of representation by Sierra Club was exemplary, we believe the $110 rate, though perhaps lower than that billable to private clients, is still near the top level of court awarded fees and incorporates a presumption of skill and dedication of the type exhibited by legal craftsmen of Mr. Brecher's capabilities in this area of the law.

## II. EDF's REQUEST

EDF requests attorneys' fees of $98,-359.50 reflecting $62,010 for services rendered by EDF's own attorneys, and $36,-349.50 for their retained counsel, Trilling & Kennedy, who worked on the attorneys' fees portion of the proceeding. The Trilling & Kennedy amounts reflect upward adjustments of 80% (for the period between February and May, 1982) and 100% (for the prior period). *See* Motion Of The Environmental Defense Fund To Amend And Supplement Its Application For Attorneys' Fees And Amended Application Therefore at 2 (May 17, 1982) (hereinafter Motion of the EDF).[7]

### A. Number of Hours

EDF claims 398 hours for the work of four staff attorneys.[8] The government has

---

**6.** As we repeated recently in *EDF v. EPA,* 672 F.2d at 59 n.16 (citing *Copeland,* 641 F.2d at 892), "[t]he burden of justifying any deviation from the 'lodestar' rests on the party proposing the deviation." *See also EDF v. EPA,* 672 F.2d at 61:

> Finally, we must also consider the "results of the litigation." *Copeland,* 641 F.2d at 894. Although petitioners need not "prevail" in order to claim attorneys' fees under TSCA, we believe that "non-prevailing" is a factor that should militate against upward adjustments in the "lodestar." Here, EDF lost on one of three issues decided by the court in

*EDF v. EPA.* The issue was hardly insignificant and, therefore, it cannot be ignored in our calculations.

**7.** EDF originally accepted the government's offer of $30,125 in October, 1981 before the government's withdrawal of the offer. On March 29, 1982, EDF stated that a lodestar of $31,005 for EDF attorneys and $9,795.50 for Trilling & Kennedy would be satisfactory if "multiplied by an appropriate upward adjustment." Motion of the EDF at Exhibit 1.

**8.**

| | Butler | Rauch | Corcoran | Lennett |
|---|---|---|---|---|
| Preparation of Petition for Review (filed 8–10–79) | | 10 | | |
| Motion for Order Compelling EPA to Convene Proceedings for Reconsideration (filed 10–26–79) | | 21 | | |
| Reply to EPA's Opposition to Said Motion (filed 11–28–79) | 3.5 | 30 | | |
| Preparation of Petition for Review of Order Denying Petition for Reconsideration (filed 2–19–80) | | 7 | | |

no quarrel with this number. It does, however, dispute the additional 179 hours[9] claimed for Trilling & Kennedy, asserting that there was no need for both partners to represent EDF at fee negotiations and consultations.[10] In support the government cites *Copeland*, 641 F.2d at 891: "no compensation is due for non-productive time. For example, where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time." We are satisfied, however, that such was not the case here. We have carefully surveyed the documentation by Trilling & Kennedy and have assured ourselves that their efforts were not duplicative. *See, e.g.,* Motion of the EDF, Declaration of Bingham Kennedy.

We are, however, troubled by a claim of close to $20,000 for time spent attempting to collect $31,005. Of course, the government must pay some price for an unsuccessful, even if *bona fide*, effort to block an award in *Sierra Club I.* But approximately half of the 179 hours was for time spent by Trilling & Kennedy during the three months following our decision in *Sierra Club II.* During that same period, Brecher spent five additional hours on Sierra Club's attorneys' fees claim. In retrospect, Sierra Club seems to have been more prudent, but we cannot say all but five hours of Trilling & Kennedy's time was unreasonably spent. However, after examining the time sheets and affidavits of Trilling & Kennedy, we feel that some reduction is in order. We conclude that only 40.38 hours were reasonably expended after February 5. (This represents a downward adjustment of approximately 50%.) With the adjustments noted on Trilling & Kennedy's May 18, 1982 erratum, the total hours recognized for Trilling & Kennedy are 147.93.

## B. *Rates of Pay*

Although the government makes a general challenge to EDF's rate of pay for its attorneys on the basis that it does not accord with *NACV* standards of proof for "market value," we are not convinced. The EDF lawyers are billed per hour respectively at $110 for chief counsel William Butler, $75 for Robert Rauch, and $55 each for Larry Corcoran and David J. Lennett. Since all are employed by a public interest organization, they cannot be expected to

|  | Butler | Rauch | Corcoran | Lennett |
|---|---|---|---|---|
| Motion for Discovery and Memorandum in Support Thereof (filed 4–11–80) |  | 15 | 24 |  |
| Reply to EPA's Opposition to Said Motion to Supplement the Record & Memorandum in Support Thereof (filed 5–14–80) | 17.5 | 40 | 35 | 19 |
| Reply to EPA's Response to Motion to Supplement the Record (filed 5–28–80) | 10 |  |  |  |
| EDF Brief (filed 7–11–80) | 40 |  | 25 |  |
| EDF Reply Brief (filed 9–30–80) and Preparation for Oral Argument | 50 |  | 30 | 14 |
| Attorneys Fees Request |  |  |  | 7 |
| TOTAL | 121 | 123 | 114 | 40 |

**9.** Hours claimed are: Kennedy, 50.75; Trilling, 102.80; Doherty, 25.5. *See* Motion of the EDF, Declaration of Bingham Kennedy at 22–24; Memorandum In Support Of Amended Motion For Attorneys' Fees And In Reply To Respondent's Opposition To EDF's Request For An Award Of Attorneys' Fees at 39 (Nov. 13, 1981). An additional 6.05 hours were recently requested, which we allow in full. Reply of Petitioner EDF To May 27, 1982 U.S. Response at 6 (June 9, 1982).

**10.** In *EDF v. EPA*, 672 F.2d at 62, the total hours awarded to Trilling & Kennedy were 84.-8.

submit client billings. Further, *EDF v. EPA* approved hourly rates for Butler and Lennett of the same amount claimed here. *See also Copeland*, 641 F.2d at 902 ($57 hourly rate for associates is reasonable). And as to the other two EDF attorneys (Rauch and Corcoran): Rauch has 7 years of experience in environmental work and is asking $75 per hour—this is certainly comparable to the rate applied to Ms. Warren who received $90 per hour in *EDF v. EPA* and who had 9 years of the same kind of experience—and Corcoran is of the same vintage as Mr. Lennett. The government interposes no specific objection to the rate of pay ($110 per hour) for Trilling & Kennedy's service and only a minor objection to the rate of pay for EDF's attorneys.[11] Thus, EDF is entitled to an award of $45,874.80, calculated as follows:

|  | Rate/Hr. | Hrs. | Lodestar |
|---|---|---|---|
| Butler | $110 | 121 | $13,310.00 |
| Rauch | 75 | 123 | 9,225.00 |
| Corcoran | 55 | 114 | 6,270.00 |
| Lennett | 55 | 40 | 2,200.00 |
|  |  |  | $31,005.00 |
| Kennedy | $110 | 50.75 | $ 5,582.50 |
| Trilling | 110 | 102.80 | 11,308.00 |
| Doherty | 55 | 25.50 | 1,402.50 |
| Adjustment to Trilling & Kennedy hours | 110 | (37.17) | (4,088.70) |
| Additional hours spent to respond to U. S. Response [12] | 110 | 6.05 | 665.50 |
|  |  |  | $14,869.80 |
|  |  |  | $45,874.80 |

For the reasons detailed above, we decline to allow any upward adjustment to that figure.

*Judgment Accordingly.*

ROBB, Senior Circuit Judge, dissenting in part:

I agree that Sierra Club and the Environmental Defense Fund are entitled to some attorneys' fees despite their lack of success on the merits. I also agree with the court's calculation of hours reasonably expended and hourly rates. However, when a litigant loses on every issue in the case, as here, I think the "appropriate" standard under section 307(f) of the Clean Air Act calls for some reduction in the lodestar amount. Accordingly, I dissent from the portion of the majority opinion discussing adjustments to the lodestar.

11. *See* Declaration of Jose R. Allen at 7 (May 27, 1982):

|  | Hours | Rate | Lodestar |
|---|---|---|---|
| William Butler | 121 | $100/hr($110/hr) | $12,100($13,310) |
| Robert Rauch | 123 | $75/hr($75/hr) | $ 9,225($ 9,225) |
| Larry Corcoran | 114 | $50/hr($55/hr) | $ 5,700($ 6,270) |
| David Lennett | 40 | $40/hr($55/hr) | $ 1,600($ 2,200) |
| Legal Intern * | 75 | $20/hr(0) | $ 1,500(0) |
| Totals |  |  | $30,125($31,005) |

   * EDF did not claim any hours for the work of a legal intern in its amended motion.

(EDF figures inside parentheses; government figures outside parentheses.)

12. *See* n.9 *supra*.

In *Copeland v. Marshall*, 205 U.S.App. D.C. 390, 641 F.2d 880 (1980) (*en banc*), this court stated that adjustments to the lodestar "may be upward or downward," noting "[a]n upward adjustment for quality is appropriate only when the attorney performed exceptionally well, or obtained an exceptional result for the client." *Id.* at 404, 641 F.2d at 894. Considering result as part of the quality assessment, it is hard to imagine a better case for downward adjustment than this one. If counsel were private practitioners their clients might well complain that they could have lost the case for less money.

This argument applies with special force to statutes such as section 307(f), which permit awards of attorneys' fees to non-prevailing parties where "appropriate". One purpose of awarding fees to non-prevailing parties is to shift the costs of a private lawsuit to the "taxpaying public, which receives the benefits of [the] litigation." *Natural Resources Defense Council, Inc. v. EPA*, 484 F.2d 1331, 1338 (1st Cir. 1973), *cited in* H.Rep.No.95–294, 95th Cong., 1st Sess. 337, U.S.Code Cong. & Admin.News 1977, p. 1077. Reducing the award in this case would recognize the diminished value of a losing lawsuit to the public.

This court has refused to reduce the lodestar to account for lack of success when a party lost on only one of three issues. *See Environmental Defense Fund v. EPA*, 217 U.S.App.D.C. 189, 672 F.2d 42 (1982). Here, however, the petitioners lost on every issue; they batted zero. If downward adjustments to the lodestar are ever to be made as *Copeland v. Marshall* suggests, this is an "appropriate" place to start.