[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 30, 2002
THOMAS K. KAHN
CLERK

No. 01-12164

_____

D.C. Docket No. 95-00587-CV-ORL-22

LOGGERHEAD TURTLE (Caretta caretta),
GREEN TURTLE (Chelonia mydas), et al.,

                                        Plaintiffs-Appellees,

    versus

THE COUNTY COUNCIL OF VOLUSIA
COUNTY, FLORIDA, a political subdivision
of the State of Florida,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court for the
Middle District of Florida

_____

**(September 30, 2002)**

Before TJOFLAT and BIRCH, Circuit Judges, and GOLDBERG[*], Judge.

_____

[*] Honorable Richard W. Goldberg, Judge, U.S. Court of International Trade,
sitting by designation.

GOLDBERG, Judge:

The County Council of Volusia County, Florida (the "County") appeals the order of the district court granting attorney's fees to the appellees. The County argues that the Supreme Court's intervening decision in <u>Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources</u>, 532 U.S. 598 (2001), eliminates the catalyst test, on which the district court relied, as a basis to award attorney's fees in citizen suits under the Endangered Species Act, 16 U.S.C. § 1531 <u>et seq.</u> (2000) ("ESA"). For the reasons that follow, we find that <u>Buckhannon</u>'s holding does not extend to the fee-shifting provision of the ESA and that the district court did not abuse its discretion in awarding the appellees attorney's fees.

I.

In 1995, appellees the loggerhead sea turtle, green sea turtle, and two interested Florida citizens (collectively, the "Turtles"), filed a complaint in federal district court alleging that the County was taking endangered sea turtles in violation of the ESA, and seeking declaratory and permanent injunctive relief.[1]

---

[1] We only briefly summarize the background of this protracted litigation, focusing on the facts and procedural history most relevant to the attorney's fees issue. For a more complete discussion, see <u>Loggerhead Turtle v. County Council</u>, 896 F. Supp. 1170 (M.D. Fla. 1995); <u>Loggerhead Turtle v. County Council</u>, 148 F.3d 1231 (11th Cir. 1998); <u>Loggerhead Turtle v. County Council</u>, 92 F. Supp. 2d

The Turtles alleged that takes occurred because, during sea turtle nesting season, (1) the County permitted limited vehicular access to its beaches, and (2) the County's ordinance restricting artificial beachfront lighting was ineffective in preventing takes, because it both failed to prevent disorientation and misorientation of sea turtle hatchlings, and exempted certain municipalities within the County altogether. Concurrent with the complaint, the Turtles filed a motion for a preliminary injunction to prevent the County from permitting beach driving and artificial light sources that resulted in the taking of sea turtles within any part of the County. Shortly after answering the complaint, the County applied to the U.S. Fish and Wildlife Service (the "Service") for an Incidental Take Permit ("ITP"), which would authorize takes incidental to a lawful activity.

In ruling on the Turtles' motion for a preliminary injunction, the district court agreed generally that artificial beach lighting resulted in takes, but found insufficient evidence that the County's existing lighting ordinance, designed to protect turtles from beach lighting, was reasonably likely to result in future takes of sea turtles. Loggerhead Turtle v. County Council, 896 F. Supp. 1170, 1180-81 (M.D. Fla. 1995). The Court also held that it lacked clear legal authority to order

_____

1296 (M.D. Fla. 2000); Loggerhead Turtle v. County Council, 120 F. Supp. 2d 1005 (M.D. Fla. 2000).

3

the County to enact further legislation, and that the County was not responsible for takes by its municipalities. Id. at 1181. However, the district court found that beach driving was reasonably likely to result in future taking of sea turtles, and granted an injunction preventing the County from permitting most beach driving during nesting season. Id. at 1181-82.

The beach driving injunction remained in force for the 1995 and 1996 turtle nesting seasons. On November 21, 1996, the Service granted an ITP, whereupon the County moved to dismiss the Turtles' action. The Turtles opposed the motion, arguing that the ITP only permitted takes by beach driving, not beach lighting. On December 26, 1996, the district court held that both types of takes were covered by the ITP, and dismissed the entire action. The Turtles then moved for attorney's fees and costs, but the court denied the motion without prejudice pending the Turtles' appeal.

On appeal to this Court, the Turtles raised three issues: (1) the district court's ruling that the ITP covered takes from artificial beach lighting; (2) the district court's ruling that the Turtles lacked standing to sue the County regarding beach lighting takes in those municipalities, not joined in the suit, over which the County lacked plenary regulatory authority; and (3) the district court's order denying the Turtles' motion to amend their complaint by adding the endangered leatherback

4

sea turtle as a plaintiff. We reversed on all issues and remanded to the district court. Loggerhead Turtle v. County Council, 148 F.3d 1231, 1258 (11th Cir. 1998), cert. denied 526 U.S. 1081 (1999). We denied the Turtles' motion for attorney's fees and costs without prejudice so that the issue could be addressed at the conclusion of the action.

On June 7, 1999, the Turtles amended their complaint to include the leatherback turtle as a plaintiff and add a claim under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"), naming the United States Secretary of the Interior as defendant. The amended complaint omitted the beach driving claim, whose dismissal the Turtles had not appealed. On June 17, 1999, the County voluntarily adopted County Ordinances 99-12 and 99-13, more stringent beachfront lighting regulations whose purview subsumed the previously excluded municipalities. Shortly thereafter, the Turtles renewed their motion for a preliminary injunction, challenging the County's newly amended lighting ordinances. On March 24, 2000, the district court denied the preliminary injunction and entered summary judgment for the County on the beach lighting claim, after finding that the County's amendment of its lighting ordinances had effectively mooted the issue. Loggerhead Turtle v. County Council, 92 F. Supp. 2d 1296, 1309 (M.D. Fla. 2000). On May 17, 2000, the district court held that the ITP

5

did not violate the APA, awarded costs to defendants with respect to that claim, and closed the case. Loggerhead Turtle v. County Council, 120 F. Supp. 2d 1005, 1026-27 (M.D. Fla. 2000).

Arguing that their suit was the catalyst for improved protection of sea turtles, the Turtles renewed their motion for attorney's fees and costs, in the amount of $313,452.73. This claim encompassed all legal work on the driving and lighting issues performed through June 17, 1999, the date that the County amended its beach lighting ordinances. The County conceded fees incurred for the beach driving claim up to August 1, 1995, when the district court issued its preliminary injunction. However, the County contested fees between that date and the district court's December 20, 1996 order dismissing the beach driving claim, arguing that the Turtles' suit did not have a catalytic effect on the County's ITP application.[2] With respect to the beach lighting claim, the County objected to the award of any fees. The County argued that the Turtles failed to achieve their goal of a declaratory judgment, that enactment of County Ordinances 99-12 and 99-13 was

---

[2] Although the ITP permitted incidental takes, the parties did not dispute that, relative to the status quo, its acquisition furthered the protection of endangered sea turtles, presumably because the ITP carefully delimited the scope of permissible takes and set forth fifteen categories of measures the County was required to undertake to minimize and mitigate such takes. See Loggerhead Turtle, 148 F.3d at 1239-42.

not motivated by the Turtles' suit, that the district court's March 24, 2000 order dismissing the claim demonstrated that it was not colorable, and that the Turtles' suit had failed to contribute to the goals of the ESA.

The magistrate judge found that the Turtles were entitled to fees and costs for all legal work on the driving and lighting issues performed up to June 17, 1999, in the amount of $286,082.73.[3] On March 23, 2001, the district court issued an order implicitly adopting the magistrate judge's recommendation in toto. The court held that the Turtles were entitled to fees for the entire beach driving claim, and for the beach lighting claim through June 17, 1999, when the County amended its lighting ordinances. In applying the so-called catalyst test, the court relied on our decision in Morris v. City of West Palm Beach, 194 F.3d 1203 (11th Cir. 1999), wherein we held that plaintiffs who have not obtained a formal judgment in their favor may nonetheless be awarded fees if (1) the defendant takes an action materially altering the legal relationship between the parties such that the plaintiffs achieve a significant goal of their suit; (2) their suit was the catalyst for such

---

[3] The court employed the lodestar method for determining fees, multiplying the reasonable hourly rate for the provision of legal services by the hours reasonably expended. See Hensley v. Eckerhart, 461 U.S. 424 (1983). The County did not object to, and the court found reasonable, the proposed hourly rates of the Turtles' counsel. The court did make minor reductions in hours claimed for inadequate documentation and for hours unreasonably expended.

7

action; and (3) the plaintiffs' claim was colorable and enjoyed reasonable likelihood of success on its merits. Id. at 1207-08. The court found that the Turtles' goal in bringing suit was to afford greater protection to endangered sea turtles nesting on the County's beaches, and that the County's adoption of more stringent lighting ordinances afforded such protection and materially altered the parties' legal relationship. The court further found that the Turtles' suit was the primary impetus for the adoption of the new ordinances, and that the Turtles' claims were objectively reasonable. Accordingly, the court awarded fees and costs in the amount of $286,082.73.

On appeal of this award, the County now concedes all fees and costs on the beach driving claim, but disputes fees for the beach lighting claim after the dismissal of the driving claim on December 20, 1996. The County argues that the catalyst test on which the district court relied in awarding fees for the lighting claim has since been invalidated by the Supreme Court's recent decision in Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources, 532 U.S. 598 (2001). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 (2000).

II.

Although we review a district court's decision to award attorney's fees for abuse of discretion, the question of law regarding the proper standard for the award is an issue we consider de novo. Barnes v. Broward County Sheriff's Office, 190 F.3d 1274, 1276-77 (11th Cir. 1999). We review any factual findings germane to that question under a clear error standard. Head v. Medford, 62 F.3d 351, 354 (11th Cir. 1995).

Under the "American Rule" of civil litigation, parties to a lawsuit ordinarily pay their own attorney's fees. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). Several exceptions to this principle exist, most notably in certain statutory fee-shifting provisions that permit or require a court to order one party to pay the fees and costs of another. Typically, such statutes allow courts to award fees to the "prevailing party."[4] Less commonly, the ESA and over a

---

[4] See, e.g., Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988 (2000) ("[T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."). Some variations on this form exist, see, e.g., Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E) (2000) (allowing fees if the complainant has "substantially prevailed"), but such differences are generally deemed inconsequential. See Oil, Chem., & Atomic Workers Int'l Union v. Dep't of Energy, 288 F.3d 452, 455 (D.C. Cir. 2002) ("We have seen nothing to suggest that Congress sought to draw any fine distinction between 'prevailing party' and 'substantially prevail.'"). Absent a contrary legislative directive, a "prevailing party" is one who prevails on "any significant issue" and thereby achieves some of the benefits sought by bringing suit. Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791-92 (1989) (overruling "central issue" test applied by some lower courts);

dozen other federal statues[5] allow courts to "award costs of litigation (including reasonable attorney and expert witness fees) to any party, <u>whenever</u> the court determines such award is <u>appropriate</u>."  16 U.S.C. § 1540(g) (emphasis added).

The phrase "whenever . . . appropriate" does not permit courts to award fees and costs willy-nilly, however.  In <u>Ruckelshaus v. Sierra Club</u>, 463 U.S. 680 (1983), the Supreme Court considered whether an appeals court had properly awarded fees to two plaintiffs, all of whose legal claims under the Clean Air Act, a "whenever . . . appropriate" statute, the lower court had completely rejected.  <u>See</u>

---

accord <u>Ruffin v. Great Dane Trailers</u>, 969 F.2d 989, 992 (11th Cir. 1992).  "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."  <u>Garland</u>, 489 U.S. at 792-93.

    [5] <u>See</u> Surface Mining Control and Reclamation Act, 30 U.S.C. § 1270(d) (2000); Deep Seabed Hard Mineral Resources Act, 30 U.S.C. § 1427(c) (2000); Marine Protection, Research and Sanctuaries Act, 33 U.S.C. § 1415(g)(4) (2000); Deepwater Port Act, 33 U.S.C. § 1515(d) (2000); Safe Drinking Water Act, 42 U.S.C. § 300j-8(d) (2000); Noise Control Act, 42 U.S.C. § 4911(d) (2000); Energy Reorganization Act of 1974, 42 U.S.C. § 5851(e) (2000); Energy Policy and Conservation Act, 42 U.S.C. § 6305(d) (2000); Clean Air Act, 42 U.S.C. §§ 7604(d), 7607(f), 7622(e)(2) (2000); Powerplant and Industrial Fuel Use Act, 42 U.S.C. § 8435 (2000); Ocean Thermal Energy Conversion Act, 42 U.S.C. 9124(d) (2000); Outer Continental Shelf Lands Act, 43 U.S.C. 1349(a)(5) (2000); Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, Pub. L. 106-181, Title V, § 519(a), 114 Stat. 61, 145-49 (2000) (to be codified at 49 U.S.C. § 42121(b)(6)(B)).  <u>See also</u> Toxic Substances Control Act, 15 U.S.C. 2619(c)(2) ("[T]he court . . . may include an award of costs of suit and reasonable fees for attorneys and expert witnesses if the court determines that such an award is appropriate.").

id., rev'g Sierra Club v. Gorsuch, 672 F.2d 33, 41 (D.C. Cir. 1982) (holding that award of fees was appropriate because the plaintiffs "expend[ed] great efforts to perform their advocacy tasks well in matters of such technical complexity; their contribution to the court's prompt disposition of all issues raised in the case was substantial"), and Sierra Club v. Gorsuch, 684 F.2d 972 (D.C. Cir. 1982) (calculating lodestar in same case).  The Supreme Court reversed the judgment awarding fees, explaining that "the term 'appropriate' modifies but does not completely reject the traditional rule that a fee claimant must 'prevail' before it may recover attorney's fees."  Ruckelshaus, 463 U.S. at 686.  Consequently, the Court held that "absent some degree of success on the merits by the claimant, it is not 'appropriate' for a federal court to award attorney's fees."[6]  Id. at 694; see also id. at 688 n.9 ("[T]rivial success on the merits, or purely procedural victories, would [not] justify an award of fees under statutes setting out the 'when appropriate' [*sic*] standard.").  At the same time, the Court recognized a clear distinction between "prevailing party" fee award statutes and "whenever . . . appropriate" statutes, observing with respect to the latter that Congress had sought

---

[6]  While the Court's holding applied to § 307(f) of the Clean Air Act, 42 U.S.C. § 7607(f), the Court noted that "the interpretation of 'appropriate' in § 307(f) controls construction of the term" in all statutes containing the 'whenever . . . appropriate' standard." Ruckelshaus, 463 U.S. at 682 n.1.

11

to expand the class of parties eligible for fee awards from prevailing parties to partially prevailing parties -- parties achieving some success, even if not major success . . . [and] to eliminate both the restrictive readings of "prevailing party" adopted in some of the cases . . . and the necessity for case-by-case scrutiny by federal courts into whether plaintiffs prevailed "essentially" on "central issues."

Id. at 688 (emphasis omitted).

While Ruckelshaus remains the only case in which the Supreme Court has expounded the "whenever . . . appropriate" standard, the Court recently addressed the issue of fee award eligibility under "prevailing party" statutes in Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources, 532 U.S. 598 (2001). In Buckhannon, the Court explained that only a party who obtains a judgment on the merits or a similar court-ordered change in the parties' legal relationship, such as a consent decree,[7] may be considered a "prevailing party" for purposes of a fee award. Id. at 603-04. Accordingly, the Court held that the catalyst test "is not a permissible basis for the award of attorney's fees" under the two "prevailing party" statutes at issue in that case, id. at

---

[7] We recently noted the existence of a circuit split over "whether a private settlement, without further judicial action, constitutes an 'alteration in the legal relationship of the parties' sufficient to make the plaintiff a 'prevailing party.'" Am. Disability Ass'n, Inc. v. Chmielarz, 289 F.3d 1315, 1319 n. 2 (11th Cir. 2002) (comparing Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128, 1134 & n.5 (9th Cir. 2002), with N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester County Taxi & Limousine Comm'n, 272 F.3d 154, 158-59 (2d Cir. 2001)).

610, because a "defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur." Id. at 605.

The County claims that Buckhannon's invalidation of the catalyst test as applied to the "prevailing party" fee award provisions of the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3613(c)(2), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12205, applies equally to the ESA, and that consequently the district court erred by awarding the Turtles fees after concluding that their suit was the catalyst for the County's voluntary adoption of more stringent beach lighting ordinances. The Turtles argue that the district court's use of the catalyst test to award fees is permissible, as by its plain terms Buckhannon only applies to "prevailing party" statutes, not "whenever . . . appropriate" statutes such as the ESA.

Since Buckhannon was handed down, lower courts have extended its holding to other "prevailing party" statutes, although some courts have done so on a case-by-case basis and others have concluded that the reasoning underlying the opinion encompasses all such statutes.[8] However, only two courts have considered

---

[8] Compare Crabill v. Trans Union, L.L.C., 259 F.3d 662, 667 (7th Cir. 2001) (considering the "the text, structure, or legislative history" of the Fair Credit Reporting Act, a "prevailing party" statute, to determine whether "its attorney's fee

13

in written opinions whether <u>Buckhannon</u>'s invalidation of the catalyst test extends to "whenever . . . appropriate" fee-shifting statutes. In dicta, the Tenth Circuit observed that because of the difference in statutory language of the two broad classes of fee-shifting statues, the "basis of the Court's conclusion in <u>Buckhannon</u> is not applicable" to cases involving "whenever . . . appropriate" statutes. <u>Ctr. for Biological Diversity v. Norton</u>, 262 F.3d 1077, 1080 n.2 (10th Cir. 2001). As neither party contested the issue, the court assumed, without deciding, that the catalyst test could support a fee award under the ESA. <u>Id.</u> In <u>Southwest Center for Biological Diversity, California Native Plant Society v. Carroll</u>, 182 F. Supp. 2d 944 (C.D. Cal. 2001), the district court held that <u>Buckhannon</u> did not extend to "whenever . . . appropriate" statutes such as the ESA, citing the opinion's reliance

_____

provision has a different meaning from the provision at issue in <u>Buckhannon</u>"), <u>and</u> <u>Perez-Arellano v. Smith</u>, 279 F.3d 791, 794 (9th Cir. 2002) (extending <u>Buckhannon</u> to the Equal Access to Justice Act, a "prevailing party" statute, but noting that "the same words in different statutes may have different meanings if a different intention of Congress is manifest in the purpose, history, and overall design or context of the statute."), <u>with</u> <u>Smyth ex rel. Smyth v. Rivero</u>, 282 F.3d 268, 274 (4th Cir. 2002) (stating that "prevailing party" fee shifting provisions should be interpreted "without distinctions based on the particular statutory context in which it appears"), <u>and</u> <u>Union of Needletrades, Indus. & Textile Employers v. INS</u>, 202 F. Supp. 2d 265, 281 (S.D.N.Y. 2002) ("[T]here is no basis to hold that a theory . . . so roundly dispatched and unequivocally discarded as applied in one set of statutes . . . was left intact in other comparable statutory contexts.").

14

on the plain meaning of "prevailing party," as well as Congress's intent in choosing "whenever . . . appropriate" language.  Id. at 947.

After careful consideration, we agree that Buckhannon does not invalidate use of the catalyst test as a basis for awarding attorney's fees under the ESA, for three reasons.  First, and most important, there is clear evidence that Congress intended that a plaintiff whose suit furthers the goals of a "whenever . . . appropriate" statute be entitled to recover attorney's fees.[9]  While the legislative history of the ESA[10] does not elucidate Congress's choice of the "whenever . . . appropriate" standard with respect to that statute, prior legislative history for similar environmental statutes employing identical "whenever . . . appropriate" language is directly on point.  The 1970 Senate Report for the Clean Air Act--the very first statute to contain a "whenever . . . appropriate" fee provision--states:

---

[9]  In interpreting a statute, we only consider extrinsic evidence of congressional intent if the statute is ambiguous, applying its plain meaning would lead to an absurd result, or there is clear evidence of contrary legislative intent.  Iraola & CIA, S.A. v. Kimberly-Clark Corp., 232 F.3d 854, 857 (11th Cir. 2000).  In this case, reference to the legislative history is appropriate because, as the Supreme Court implicitly recognized in Ruckelshaus, the plain meaning of "whenever . . . appropriate" is ambiguous and there is clear evidence that Congress did not intend that phrasing to vest unfettered discretion in judges to determine the appropriateness of fee awards.

[10]  See, e.g., H.R. Conf. Rep. No. 93-740 (1973); S. Rep. No. 93-307 (1973).

15

> The Courts should recognize that in bringing legitimate actions under this section citizens would be performing a public service and in such instances the courts should award costs of litigation to such party. This should extend to plaintiffs in actions which result in successful abatement but do not reach a verdict. <u>For instance, if as a result of a citizen proceeding and before a verdict is issued, a defendant abated a violation, the court may award litigation expenses borne by the plaintiffs in prosecuting such actions</u>.

S. Rep. No. 91-1196, at 38 (1970) (emphasis added), <u>cited in</u> <u>Ruckelshaus</u>, 463 U.S. at 686 n.8. <u>See also</u> S. Rep. No. 92-414, Federal Water Pollution Control Act Amendments of 1972 ("Clean Water Act"), at 3747 (1971) (containing identical language), <u>cited in</u> <u>Gwaltney of Smithfield, Ltd. v. Cheasapeake Bay Found., Inc.</u>, 484 U.S. 49, 67 n.6 (1987) (noting in dicta that the aforecited legislative history of the Clean Water Act protects plaintiffs from "the suddenly repentant defendant").[11] In the course of holding that litigants were required to achieve some success on the

---

[11] In 1987, Congress amended the Clean Water Act to provide that courts could only award attorney's fees to a "prevailing or substantially prevailing party." <u>See</u> Pub. L. 100-4, § 505(c), 101 Stat. 76 (1987), <u>codified at</u> 33 U.S.C. § 1365(d). It is the evidence of congressional intent, and interpretation of same, prior to this amendment that is relevant to the present inquiry. Indeed, Congress's decision to amend the fee-shifting provision of the Clean Water Act while leaving intact identical provisions in the ESA and other environmental statutes underlines the distinction between the two classes of fee-shifting statutes. <u>See</u> 2A Norman Singer, <u>Statutes and Statutory Construction</u> § 46.06 (6th ed. 2000) ("[Congress's] use of different terms within related statutes generally implies that different meanings were intended.").

merits in order to be awarded fees under a "whenever . . . appropriate" statute, the decision in Ruckelshaus acknowledged the significance of these reports:

> Congress found it necessary to explicitly state that the term "appropriate" extended to suits that forced defendants to abandon illegal conduct, although without a formal court order; this was no doubt viewed as a somewhat expansive innovation, since, under then-controlling law, . . . some courts awarded fees only to parties formally prevailing in court. We are unpersuaded by the argument that this same Congress was so sure that "appropriate" also would extend to the far more novel, costly, and intuitively unsatisfying result of awarding fees to unsuccessful parties that it did not bother to mention the fact. If Congress had intended the far-reaching result urged by respondents, it plainly would have said so, as is demonstrated by Congress' careful statement that a less sweeping innovation was adopted.

Ruckelshaus, 463 U.S. at 686 n.8 (initial emphasis added).

In sum, there is unambiguous evidence that Congress intended the "whenever . . . appropriate" fee provisions of the Clean Air Act and the Clean Water Act to allow fee awards to plaintiffs who do not obtain court-ordered relief but whose suit has a positive catalytic effect. As these statutes only briefly preceded the 1973 passage of the EWA, we believe it is likely that Congress intended the identical language of the EWA to have the same effect. See Ruckelshaus, 463 U.S. at 682 n.1 (stating that "whenever . . . appropriate" provisions in diverse statutes should be construed the same); cf. Morrisette v. United States, 342 U.S. 246, 263 (1953).

17

Second, the Court's opinion in <u>Buckhannon</u> makes no reference whatsoever to <u>Ruckelshaus</u> or to the "whenever . . . appropriate" class of fee-shifting statutes.[12] Instead, the Court's opinion expressly addressed only the meaning of "prevailing party," <u>see</u> <u>Buckhannon</u>, 532 U.S. at 600, "a legal term of art," <u>id.</u> at 603, that the Court found to have a "rather clear meaning." <u>Id.</u> at 607. <u>See also</u> <u>Am. Disability Ass'n, Inc. v. Chmielarz</u>, 289 F.3d 1315, 1318-19 (11th Cir. 2002) ("<u>Buckhannon</u> . . . changed the landscape of the 'prevailing party' inquiry.").

Finally, an important policy consideration discussed in the <u>Buckhannon</u> opinion is inapplicable in the context of the ESA. The Court discounted the petitioners' argument that "mischievous defendants" could avoid liability for attorney's fees in a meritorious suit by voluntarily changing their conduct, because "so long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case." <u>Buckhannon</u>, 532 U.S. at 608-09. <u>See also</u> <u>id.</u> at 612 (Scalia, J., concurring) (noting that historically "costs were awarded in actions <u>at law</u> to the 'prevailing party,'" whereas "an equity court could award costs as the equities of the case might require" (internal quotation marks omitted)). By contrast, citizen suits under the ESA may <u>only</u> seek equitable relief; damages are

---

[12] Chief Justice Rehnquist delivered both the <u>Ruckelshaus</u> and <u>Buckhannon</u> opinions for the Court.

18

not available. See 16 U.S.C. § 1540(g). Thus, the very policy consideration underlying the Buckhannon opinion actually cuts the other way in the context of "whenever . . . appropriate" statutes. Otherwise, a "mischievous" or simply rational defendant would often privately amend its offending conduct to avoid fees liability, particularly where the plaintiffs have already won a procedural victory that increases their odds of ultimately obtaining a favorable judgment, and the litigation has been sufficiently protracted that the amount of attorney's fees is significant. In the instant case, the County amended its lighting ordinance only after more than four years of litigation, and closely on the heels of our decision favorable to the Turtles on that same issue. A contrary rule would cripple the citizen suit provision of the Endangered Species Act, in derogation of Congress's "abundantly clear" intent to "afford[ ] endangered species the highest of priorities." Tenn. Valley Auth. v. Hill, 437 U.S. 153, 194 (1978).

For these reasons, we hold as a matter of law that the Supreme Court's decision in Buckhannon does not prohibit use of the catalyst test as a basis for awarding attorney's fees and costs under the "whenever . . . appropriate" fee-shifting provision of the Endangered Species Act. We further hold that the district court's determination that the Turtles' suit had a catalytic effect was not clearly

19

erroneous, and that the court did not abuse its discretion by awarding them fees and costs.[13]

## III.

For the foregoing reasons, we AFFIRM the order of the district court awarding fees and costs to the appellees.

---

[13] The parties' arguments in this appeal were directed solely to the issue of whether Buckhannon invalidated the district court's reliance on the catalyst test. The County did not argue, as it had before the district court, that the Turtles' suit had no causal effect on the County's amendment of its lighting ordinances. Nor did the County argue in the alternative that, even if the catalyst test were still permissible under the ESA, the district court's formulation of the test was in error. Although Morris, on which the district court relied but which Buckhannon directly overruled, set forth the catalyst test in the context of a "prevailing party" fee award statute, we assume, without deciding, that the elements of the test are the same under a "whenever . . . appropriate" statute. Cf. Powder River Basin Res. Council v. Babbitt, 54 F.3d 1477, 1486-87 (10th Cir. 1995) (holding that its version of the catalyst test was identical under both classes of fee award statutes). Compare also Fla. Key Deer v. Bd. of County Comm'rs for Monroe County, 772 F. Supp. 601, 602-03 (S.D. Fla. 1991) (applying catalyst test under ESA and considering, inter alia, whether litigation furthered purposes of statute), with Klamath Siskiyou Wildlands Ctr. v. Babbitt, 105 F. Supp. 2d 1132, 1135-42 (D. Or. 2000) (not requiring showing that litigation furthered purposes of ESA).